Moore Meat Market v. Commissioner.
Moore Meat Mkt. v. Commissioner
Docket No. P.T. 397.
United States Tax Court
1943 Tax Ct. Memo LEXIS 419; 2 T.C.M. (CCH) 80; March 4, 1943
*419 George D. Wilson, Esq., and Rolland O. Wilson, Esq., for the petitioner. Breedlove Smith, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: This proceeding involves a claim for refund of the amount collected from petitioner as tax under the Agricultural Adjustment Act. It was instituted under Title VII (Section 901 et seq.) of the Revenue Act of 1936 by the filing of a petition before the United States Processing Tax Board of Review on August 18, 1941. By Section 510 of the Revenue Act of 1942 the Board of Review established under Section 906(b) of the Revenue Act of 1936 was abolished and the jurisdiction vested in it was transferred to, and vested in, this tribunal. The instant proceeding was pending in the Board of Review on December 31, 1942. Hearing had been held at Enid, Oklahoma, on October 20 and 21, 1942, before a member of the Board; but no findings of fact had been recommended to the Board or made by it. On January 5, 1943, an order was issued by this court directing the parties to show cause, on or before January 25, 1943, why it should not proceed to decide the case upon the record already submitted and the briefs (if any) already *420 filed. Respondent filed an answer to the order, pointing out that at the hearing objections had been made to the granting of a motion of petitioner to amend its petition by attaching a copy of an amended claim for refund and to the reception in evidence of certain proffered testimony, none of which had been ruled upon by the Board of Review. It was also pointed out that inasmuch as petitioner had not completed its case, the respondent had not been afforded an opportunity to present his evidence. In respondent's answer to the order to show cause it is stated: In the event the Court should sustain the respondent's motion to strike such evidence, the respondent would be satisfied to submit the case for decision by the Court on the existing record. If, however, the Court should deny the respondent's motion to strike such evidence, the respondent respectfully requests that the case not be decided on the existing record, but that an opportunity be given him to examine such namely discovered evidence [the evidence contained in the amended claim] and to present such further evidence as he may deem proper with respect to the evidence submitted by the petitioner. On December 14, 1942, there *421 had been filed with the Board of Review a document signed by J. Harry Moore, a member of the firm, and petitioner's attorney, which, exclusive of caption and signatures, is as follows: Submission of Case Comes now the above named petitioner and rests its case and submits the same on the evidence heretofore taken at the hearing at Enid, Oklahoma. At the conclusion of said hearings petitioner asked for a continuance and this case was continued, but petitioner is of the opinion the evidence heretofore submitted is sufficient to entitle it to a favorable decision on the merits. WHEREFORE, petitioner hereby submits this case for decision on the merits on the evidence heretofore taken. On January 26, 1943, this tribunal issued an order recounting some of the facts above set out and directing that a copy of the answer to the order to show cause, filed by the respondent, be served upon the petitioner. The return date of the show cause order was extended to February 24, 1943 * * * to enable the parties to properly inform the Court on the question raised by the Commissioner's answer to the order to show cause. If the petitioner does not find it convenient to be present in Washington on *422 the 24th of February, he may incorporate his views in a memorandum or other writing and file it with the Court on or before that date. No appearance was made by petitioner or counsel on February 24, 1943, and no memorandum or other writing has been received. The complete record has now been examined by Division No. 11 of this Court. Consideration has also been given to the arguments and suggestions of counsel made at the hearing and in the documents filed by them, as well as to the objections which were made by the parties and taken under advisement by the presiding member. For reasons which will hereinafter appear it has not been deemed necessary to rule upon all the objections or to direct that further hearing be had. We set out at this juncture the facts established by the record. Findings of Fact Petitioner is a partnership composed of J. Harry Moore, his father and his uncle. At all times here material it was engaged in the general business of slaughtering cattle and hogs, processing and preparing the carcasses and the various cuts for sale, and selling, principally at wholesale to stores, hotels and cafes in Enid, Oklahoma, where its principal office and place of business *423 is located, the meat and meat products so derived. During the period from November 5, 1933, through the month of November, 1935, petitioner, as a first domestic processor of pork and pork products, paid to the Commissioner of Internal Revenue, as processing taxes under the Agricultural Adjustment Act, the aggregate amount of $7,142. At an undisclosed time (apparently between December 26, 1939, and December 31, 1939) petitioner filed with the Commissioner of Internal Revenue a claim for refund of the processing taxes referred to in the preceding paragraph. The form prescribed by the department (P.T. Form 79, Treasury Department) was used; but it was not completely filled out and some of the information called for was not included. On or about May 19, 1941, the Commissioner mailed to petitioner a notice of disallowance of its claim. A copy of such notice is attached to the petition. Therein it is stated, inter alias: Your claim does not contain margins computed in accordance with Section 907 of the Revenue Act of 1936 and Article 605 of Regulations 96, nor has any other evidence been submitted establishing that you bore the burden of the tax as required by Section 902 of the *424 Act and Article 606 of Regulations 96. Hence, you have not filed a true and complete claim in accordance with the Regulations prescribed by the Commissioner as required by Section 903 of the Act and Article 202 of Regulations 96. Accordingly, your claim is hereby disallowed in the full amount. Schedule D of the form referred to is designed to show: (a) the average margin for the tax period; (b) the average margin for the period before and after the tax; and (c) the tax burden borne by the claimant and not shifted, as indicated by the margin evidence. Under subdivision (d) of the same schedule the claimant is required to list all documents, exhibits, statements of facts and other evidence in support of his showing as to the margins or in rebuttal thereof, tending to show that he bore the burden of the tax. In subdivision (a) of Schedule D as submitted by petitioner the total number of units of the commodity processed is shown to be 263,719 and the profit (gross sales less cost of commodity and tax) is shown as $8,500.94, with a resultant margin of "3+." In subdivision (b) the average margin for the period before and after the tax (it is stated claimant has no record prior to January, *425 1933) is shown to be "5+," this computation being based upon a total of 196.464 units processed during the first 8 months of 1933 and from February to July inclusive of 1936 at a profit (gross sales less cost) of $10,745.11. Before the claim was disallowed agents of the Bureau of Internal Revenue called in person at petitioner's place of business for the purpose of inspecting the evidence in support of its claims. They were shown some sales tickets, most of which were subsequent to the dates covered by the claim, and were told that the claimant had no bookkeeping records. They were also shown a small box containing some tickets for 1935 and 1936; but since they did not purport to cover any substantial portion of the period or periods in issue they were not audited by the agents. Shortly before the date of the hearing petitioner discovered that "several bushels" of its sales tickets were on top of some large refrigerators in its place of business. Some of them had been rendered illegible by water and dust, some had become loosened from the jacket or box in which they had originally been placed and some had been destroyed. Enough of them were legible to enable an auditor, employed *426 by petitioner for that purpose, to secure representative ones for each month, indicating the price being charged during the month for hams, bacon, lard, sausage, picnics, bellies, and other products sold by it during the periods before and after the tax, as well as during the period the tax was being imposed. Some of the tickets also contained information from which the price paid by petitioner for a portion of the hogs which it slaughtered could be gleaned. Petitioner supplied the auditor with the number of hogs it had killed during the periods. This was derived from a record kept by a local inspector, whose duties had required him to inspect the hogs before they were slaughtered. The number of pounds of pork, as reflected by petitioner's reports of processing tax, indicated that each hog killed by it during the period the tax was collected averaged 163.53 pounds. The auditor determined that a table contained in a pamphlet issued by the United States Department of Agriculture (referred to in the evidence as the Edinger report) justified him in assuming that each hog furnished 72.4 per cent of its live weight in meat, or 117.49 pounds each. He therefore constructed a series of tables, *427 one showing the supposed number of pounds of dressed pork sold by petitioner during each month, another assuming that the products sold consisted of the average pounds of ham, sausage, picnics, bellies, etc., as shown in the Edinger report and another assuming that the price collected was as indicated by a few of the sales tickets collected more or less at random from the "several bushels" found on the refrigerators in September, 1942. The cost was based partially upon figures secured from tickets but principally from prices paid by other packers. The auditor then deducted the estimated overhead expense of petitioner based upon what he was informed by petitioner was the amount paid for rent, phones, etc., including salaries to the partners, and concluded that the profit was the difference between the amount so indicated as total receipts and expenditures. During the period the processing tax was paid it was added to the cost. The computations and calculations referred to above were undertaken after the "several bushels" of tickets had been discovered by an auditor employed by petitioner who specialized in handling tax claims. The discovery was made in September, 1941. After the computations *428 and calculations were made in the manner above set out petitioner prepared, on P.T. Form 79, a new Claim for Refund, which it designated "Second Amended." This was sworn to on October 14, 1942, transmitted to the Board of Review, and received by it on October 16, 1942. Subdivisions (a), (b), (c) and (d) of Schedule D bear but slight resemblance to the same subdivisions in the original claim. The average margin for the tax period is shown to be.005,087 based upon a total number of units processed of 263,719 at a total cost (including tax) of $27,562.42 and a profit of $1,341.69. The average margin for the period before and after the tax is shown to be.025,918, based upon a total cost of $28,810.64 and a profit of $13,553.33. At the hearing respondent objected to the filing of the Second Amended Claim for Refund and the objection was sustained. Following colloquy between counsel and the presiding member of the Board the document was allowed to stand as an amendment to the pleadings though it was never formally captioned or filed as such and no amended answer was filed. Petitioner has failed to show that it bore the burden of the processing tax collected from it during the period from *429 November 5, 1933, to November 30, 1935. Opinion The last finding which has been made - albeit it is a mixed finding of fact and conclusion of law - is dispositive of the only issue before us. Inasmuch as the findings include evidentiary, as well as ultimate, facts it is unnecessary to write an extended opinion. The instant proceeding illustrates the reasonableness of, and the necessity for, the rule adopted by Congress and consistently applied by the courts in connection with refunds. Stated generally it is that a taxpayer who brings suit after his claim for refund has been denied may rely for recovery only on grounds presented to or considered by the Commissioner. . As stated by the court in : * * * The purpose of this requirement is to give the Commissioner notice of the nature of the claim ( , and afford an opportunity for administrative adjustment without suit. *430 (C.C.A. 8); (D. Ky.); affirmed (C.C.A. 6). The requirement of section 903 of the statute that all evidence relied upon be clearly set forth and the similar provision in Art. 202 of the Regulations, demand that the taxpayer "substantiate by clear and convincing evidence all of the facts necessary to establish his claim to the satisfaction of the commissioner" are obviously intended to permit administrative adjustment of the claim. This purpose will be defeated if upon resort to the court evidence of additional facts may be presented. The court proceeding is intended only as a review of the Commissioner's decision. Hence new grounds or facts in support of the claim should be submitted to the Commissioner by a timely amendment to the claim for refund. See Paul & Mertens, Law of Fed. Income Taxation § 51.22. New facts which the Commissioner has had no opportunity to pass upon cannot, in our opinion be adduced at the trial. This is not to say that the taxpayer cannot get a fresh decision on any disputed fact which was submitted - he may call the witnesses whose *431 statements he set forth in his claim for refund - but he cannot use facts which he failed to disclose; that is, he must not withhold part of his ammunition until the trial. The presiding member of the Board of Review appears to have had in mind the rule enunciated by the Court in the cited case when he denied peittioner's motion to attach the Second Amended Claim to its petition and ruled that it could not present "new facts, which the Commissioner has had no opportunity to pass upon." Perhaps he would have been equally positive in ruling upon the relevancy of proffered testimony had petitioner not requested that ruling be held in abeyance until the close of the evidence. The record shows, however, that he warned petitioner it was "taking * * * [its] chances on a reserved ruling." We would probably be justified in sustaining respondent's present motion to strike a substantial portion of the evidence of the accountants with reference to the margins, which would leave in the present record practically no evidence upon which to base a conclusion with reference to whether petitioner bore the burden of the tax. But in the view which we take, the evidence, if competent for any purpose, *432 is so vague, uncertain and reliable that decision must necessarily be for respondent. At best it is little more than conjecture of the witnesses, based upon unwarranted assumptions, unsound presumptions, false premises, and a sprinkling of hearsay. The government should not be required to make a refund on the basis of such evidence. We have concluded that petitioner has failed to sustain its burden of proof, even if none of the evidence is stricken. It follows therefore that no refund may be ordered and Decision will be entered for the respondent.